# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WEBROOT, INC. and<br>OPEN TEXT, INC., <br><br>        Plaintiffs<br><br>v.<br><br>FORCEPOINT LLC,<br><br>        Defendant. | Case No. 6:22-cv-00342-ADA-DTG<br><br>Lead Case No. 6:22-cv-00243-ADA-DTG<br><br>**JURY TRIAL DEMANDED** |
| FORCEPOINT LLC,<br><br>        Counterclaim-Plaintiff,<br><br>v.<br><br>WEBROOT, INC., OPEN TEXT, INC., and<br>OPEN TEXT CORPORATION<br><br>        Counterclaim-<br>        Defendants. | |

**FORCEPOINT'S OPPOSED MOTION TO STRIKE
PLAINTIFFS' INFRINGEMENT CONTENTIONS**

**TABLE OF CONTENTS**

I. Legal Standards ................................................................................................................. 1

II. Argument ........................................................................................................................... 2

    A. Factor 1: "the reason for the delay and whether the party has been diligent" ........ 3

    B. Factor 2: "the importance of what the court is excluding and the availability of lesser sanctions" ....................................................................................................... 4

        1. Wholly Unaccused Products that Should be Struck in Their Entirety ........ 4

        2. Products Not Accused within Specific Charts Should be Struck ............... 9

    C. Factor 3: "the danger of unfair prejudice" ............................................................. 10

    D. Factor 4: "the availability of a continuance and the potential impact of a delay on judicial proceedings" ............................................................................................. 10

III. Conclusion ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006)...............................................................................................2

*Tech. Licensing Corp. v. Grass Valley USA, Inc.*,
  2014 WL 3752108 (N.D. Cal. July 30, 2014)..................................................................3, 5, 7

*Vervain, LLC v. Micron Tech., Inc.*,
  Case No. 6:21-cv-487-ADA, D.I. 59 (W.D. Tex. Apr. 20, 2022) .................................2, 5, 8, 9

*WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co. Ltd.*,
  2022 WL 174517 (W.D. Tex. Jan. 18, 2022) ..........................................................................2

Defendant Forcepoint LLC ("Forcepoint") respectfully moves to strike Plaintiffs Webroot, Inc. and Open Text, Inc.'s ("Plaintiffs") Infringement Contentions (served September 9, 2022 and October 25, 2022) with respect to products that are not substantively accused and only mentioned in passing in Plaintiffs' infringement charts. Specifically, Plaintiffs have failed to provide any actual infringement allegations with respect to Forcepoint's Data Loss Prevention ("DLP"), Cloud Access Security Broker ("CASB"), Secure Access Service Edge ("SASE"), the Forcepoint ONE platform, Email Security, Web Security, and Content Disarm & Reconstruction ("CDR").[1] Courts have held, products not accused of infringement should not be included in a party's infringement contentions, and these products should be struck from Plaintiffs' infringement contentions in their entirety. Plaintiffs' infringement contentions for the '389 and '844 Patents (Exs. 1-2) are also deficient because they purport to accuse Forcepoint's Next Generation Firewall ("NGFW") but fail to actually provide any infringement allegations with respect to that product. Plaintiffs' infringement contentions for the '928 Patent are similarly deficient for the Secure Web Gateway ("SWG") product for the same reason. Ex. 5. Accordingly, Forcepoint moves to strike these allegations from Plaintiffs' infringement contentions.

## I.  LEGAL STANDARDS

Patent rules are "designed specifically to require parties to crystallize their theories of the

---

[1] Forcepoint does not concede the sufficiency of Plaintiffs' infringement contentions with respect to any of the products or functionality not discussed in this Motion. For example, on Monday, May 15, 2022, Plaintiffs raised for the first time a demand for discovery into 52 "Product(s)/Components/Modules/Features/Functionalities." Plaintiffs' demand for this laundry list of items is so broad as to encompass generic words known to the field of computer science as a whole, such as "heuristics," "file/threat hashing," "hash database," "file filtering," and "sandboxing," most of which are not tied to any specific accused product. Ex. 10 at 4-5. Such demands are just another example of Plaintiffs' excessive and unbounded requests for discovery. Plaintiffs withdrew their demand for the 52 item list shortly before the filing of this Motion, but Forcepoint will seek relief related to this list if Plaintiffs raise it in the future.

case early in the litigation so as to prevent the 'shifting sands' approach to claim construction." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (citation omitted). This Court's Standing Order Governing Proceedings 4.3 ("OGP") requires Plaintiffs to serve preliminary infringement contentions setting forth "where in the accused product(s) each element of the asserted claim(s) are found." OGP, § II. Plaintiffs "must provide sufficient notice to [defendant] for each of the accused products, either with individual charts or with detailed descriptions of how each product is represented by the single charted product." *WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co. Ltd.*, 2022 WL 174517, at *3 (W.D. Tex. Jan. 18, 2022).

"The tests for determining whether to allow a party to supplement infringement contentions and for determining whether to strike infringement contentions are essentially the same. Courts consider (1) the reason for the delay and whether the party has been diligent; (2) the importance of what the court is excluding and the availability of lesser sanctions; (3) the danger of unfair prejudice; and (4) the availability of a continuance and the potential impact of a delay on judicial proceedings." *Id.* at *2 (citation omitted).

**II.   ARGUMENT**

Plaintiffs purport to accuse nearly every single product Forcepoint offers of patent infringement, including Forcepoint's Advanced Classification Engine ("ACE"), ThreatSeeker Intelligence, Web Security, Email Security, NGFW, DLP, CASB, Advanced Malware Detection ("AMD"), Forcepoint ONE, SASE, SWG, Remote Browser Isolation ("RBI"), and CDR, but provides little-to-no context on the specific functionality accused for most of these products.

Worse, for some products, Plaintiffs' infringement contentions are entirely deficient because the purported "Accused Products" are not actually charted or otherwise relied on for its infringement theories. The Court should strike the Forcepoint products not actually accused from

2

the infringement contentions. *Vervain, LLC v. Micron Tech., Inc.*, Case No. 6:21-cv-487-ADA, D.I. 59 at 9 (W.D. Tex. Apr. 20, 2022) ("[Plaintiff] has not illustrated in its contentions that the additional uncharted products are 'reasonably similar' to those specifically charted and accused in the preliminary infringement contentions. [Plaintiff] cannot simply list products in its contentions that it believes are reasonably similar. It must illustrate why they are.") (citation omitted).

Plaintiffs' infringement contentions appear to substantively target certain products in each chart, but then, as an after-thought, in the introductory language of their exhibits, they list as accused products *any* product that appears in *any* image in *any* part of the chart, regardless of whether Plaintiffs are able to point to any allegations of infringement of that product. Plaintiffs are attempting to shoe-horn in discovery and infringement theories on a multitude of other separate and distinct products via an allegation against a specific product. This is improper and highly prejudicial to Forcepoint. "Products that are not accused of practicing any claim limitation should be excluded." *Tech. Licensing Corp. v. Grass Valley USA, Inc.*, 2014 WL 3752108, at *2 (N.D. Cal. July 30, 2014) (striking accused functionality that is merely used "in conjunction with one or more accused products" and explaining that "[t]he rules do not authorize the addition of accused instrumentalities that do not practice any specific claim limitations").

A.     **Factor 1: "the reason for the delay and whether the party has been diligent"**

Plaintiffs have not only delayed amending their contentions, but instead have entirely refused to amend. Forcepoint already pointed out these deficiencies to Plaintiffs and requested that Plaintiffs amend their contentions. Plaintiffs refused to do so. Additionally, despite Forcepoint's requests for substantive citations to where Plaintiffs accuse the products at issue in their charts, Plaintiffs have refused to provide any explanation as to how their contentions are sufficient. Instead, Plaintiffs merely repeated conclusory statements that their contentions are sufficient, pointed to superficial references to the products (*e.g.*, in the introductory language of Plaintiffs'

3

infringement charts), and asked Forcepoint to move to strike Plaintiffs' infringement contentions if Forcepoint contends they are deficient. *See, e.g.*, Ex. 9 (Plaintiffs' initial discovery dispute chart served on Forcepoint on April 28, 2023). Forcepoint's attempts at resolving the issue without Court intervention have failed, and thus it respectfully brings this Motion.

> **B.     Factor 2: "the importance of what the court is excluding and the availability of lesser sanctions"**

Forcepoint is seeking to strike only the accusations against specific products that are: (1) not sufficiently accused in Plaintiffs' contentions and (2) improperly shoe-horned in as "accused" products despite the complete lack of notice to Forcepoint as to what those infringement theories are. Thus, the contentions at issue for the specific deficient allegations are not important to Plaintiffs' infringement theories because they concern only superficially accused products. If the Court strikes only Plaintiffs' deficient allegations described in this Motion, Plaintiffs would continue to have remaining infringement theories for all asserted patents in the case.

> 1.     Wholly Unaccused Products that Should be Struck in Their Entirety

***Forcepoint DLP*** is not substantively accused for the '389 Patent, despite being listed in the introductory language of the chart. The only reference to Forcepoint DLP in the chart's body is in a portion of the chart corresponding to the preamble of claim 1:

> "ACE . . . analytics are embedded into multiple Forcepoint solutions such as Forcepoint Web Security, Forcepoint Email Security, Forcepoint Next Generation Firewall (NGFW), and ***Forcepoint DLP (Data Loss Prevention)***."

Ex. 1 at 5 (emphasis added). As an initial matter, no party has argued that the preamble is limiting. Moreover, the entirety of this chart accuses Forcepoint's ACE, for which Forcepoint has already agreed to provide discovery. The infringement allegations provide no accusations specific to Forcepoint DLP and no explanation of how it allegedly reads on the claims. At best, Plaintiffs

4

allege that the actual accused product, Forcepoint's ACE, can be "embedded within" another product. But this is insufficient to accuse Forcepoint DLP of infringement because Plaintiffs do "not accuse[] [Forcepoint DLP] of practicing any claim limitation." *Tech. Licensing*, 2014 WL 3752108, at *2. Thus, it should be excluded.

**CASB** is not substantively accused for the '844, '869, '243, and '932 Patents, despite being listed in the introductory language of the respective charts. For example, in the '844 Patent chart, which focuses on AMD (a separate and distinct product from CASB), the word "CASB" only appears in an image about AMD taken from AMD documentation. (Ex. 2 at 37, 42, 44, 46). At most, the small "CASB" icon in this image reflects that CASB is an optional product that could be purchased (or not) with AMD. Moreover, there is no explanation of how CASB allegedly reads on the claims. In fact, this same image appears in other infringement charts where CASB is ***not*** accused (*e.g.*, Ex. 3), leaving Forcepoint to guess not only what functionality is accused, but when it is accused. With respect to the '243 and '932 Patents charts, which also primarily accuse AMD functionality, Plaintiffs again cite to a graphic containing the word CASB (*e.g.*, Ex. 7 at 8, 60, 107; Ex. 8 at 8, 64, 117) and include text that states, "AMD is available as a fully integrated ***option*** for Forcepoint CASB." *E.g.*, Ex. 7 at 9, 31, 61, 108 (emphasis added); Ex. 8 at 9, 33, 65, 118 (emphasis added). None of these citations "illustrate why" CASB allegedly infringes these patents. *Vervain*, D.I. 59 at 9; *see also Tech. Licensing*, 2014 WL 3752108, at *2. CASB does not appear ***at all*** in the '869 Patent chart, confirming CASB is not substantively accused for that patent. *See* Ex. 6.

**SASE** is not substantively accused for the '721, '386, and '928 Patents, despite being listed in the introductory language of the respective charts. SASE does not appear at all in the '721 Patent chart. *See* Ex. 3. In the chart for the '386 Patent (which predominantly accuses SWG, a separate and distinct product), there is only a single reference to SASE across 160 pages. *See* Ex. 4 at 67.

This sole reference merely states that different Forcepoint products (such as SWG, CASB, and others) are available on the Forcepoint ONE cloud-based platform. *See id*. This description is cited only for the proposition that SWG operates in the cloud. *See id.* at 66 (citing the passage to allegedly support the element "a network, the network comprising the Internet"). Plaintiffs never accuse any functionality of SASE and never explain how SASE reads on this limitation, much less any of the 16 claims asserted from the '386 Patent. With respect to the '928 Patent, which accuses the RBI product, the only mention of SASE is in a screenshot from RBI documentation. *See* Ex. 5 at 80. This screenshot is used only to allegedly support that "[t]he Accused Product [*i.e.*, RBI] is deployed in the cloud." *Id*. No SASE functionality is accused—SASE just happens to appear in this image. This is insufficient to accuse SASE of any infringing activity.

**Forcepoint ONE** (the platform) is not substantively accused for the '721, '386, and '928 Patents, despite being listed in the introductory language of the respective charts. Forcepoint ONE is a software platform that allows customers to purchase different security products under one compatible ecosystem. The only product within Forcepoint ONE that is arguably accused with any specificity is Forcepoint ONE's SWG (and for patents where SWG is arguably accused, Forcepoint is not seeking to strike it from the contentions).

Setting aside Forcepoint ONE's SWG, no other Forcepoint ONE product is accused in these charts. Moreover, the Forcepoint ONE platform itself is not substantively accused of infringement. For example, "Forcepoint ONE" does not appear at all in the charts for the '721 and '928 Patents. *See* Ex. 3; Ex. 5. In the '386 Patent chart, which focuses on SWG, Forcepoint ONE is mentioned only twice in 160 pages. *See* Ex. 4 at 67, 72. First, in claim element [7A] ("a network, the network comprising the Internet"), Plaintiffs cite a passage suggesting that Forcepoint ONE operates over the Internet, but Plaintiffs never allege that Forcepoint ONE is or supplies the

6

Internet (nor could it). *See id.* at 66–67. Similarly, for claim element [7C] ("a local area network, the local area network comprising: a plurality of client-side devices, each of the client-side devices having a browser"), Plaintiffs cite a passage suggesting that Forcepoint ONE operates on a local area network. *See id.* at 70, 72. But again, Plaintiffs never contend that Forcepoint ONE (a software platform) is or supplies the local area network or client-side devices. *See id*. Put simply, Forcepoint ONE does not supply a network or the Internet; it is software that provides a central platform for multiple optional products. Plaintiffs do not explain how Forcepoint ONE meets these or any other limitations, much less any complete claim, of the '386 Patent. This is insufficient to accuse Forcepoint ONE of any infringing activity.

***Email Security*** and ***Web Security*** are not substantively accused for the '389, '844, '869, '243, and '932 Patents, despite being listed in the introductory language of the respective charts. Rather, each of these charts appears to accuse: (1) AMD, which is a separate ***optional*** product that may or may not be purchased with Email Security and Web Security, or (2) ACE, which is a subcomponent of SWG, that also is a completely separate product from Email Security and Web Security. Plaintiffs, however, do not accuse any functionality of Email Security or Web Security as infringing. *See Tech. Licensing*, 2014 WL 3752108, at *2. With respect to the '389 Patent, the only reference to either Web Security or Email Security is a single sentence in the entirety of the chart's body. *See* Ex. 1 at 5. For the same reasons described above with respect to DLP (*i.e.*, Plaintiffs' single reference fails to specify how the product read on the claims), Plaintiffs' allegations with respect to these additional products are deficient.

Regarding the '844 Patent, Plaintiffs' infringement contentions include two screenshots (both referenced twice) in the entirety of their contentions related to Web Security and Email Security. *See* Ex. 2 at 5 (preamble of claim 1), 27 (claim 6), 34 (claim 9), and 36 (preamble of

7

claim 10). The citations in the preambles are merely included as an afterthought to what Plaintiffs appear to actually accuse with respect to the '844 Patent, *i.e.*, AMD. Beyond the preambles, the only mention of Web Security and Email Security is in reference to AMD's Risk Score, stating "[a]n overall composite score is determined and passed back to the submitting security applications (Forcepoint Email Security or Forcepoint Web Security)." *Id.* at 27, 34. This just indicates that the accused product, AMD, sends data elsewhere; not that Email Security and Web Security take any allegedly infringing action. Moreover, a customer can purchase AMD without Web Security or Email Security, and there is no explanation in these charts as to how Web Security or Email Security perform any infringing action or how such products read on the claims.

Regarding the '869 Patent, the only reference to Web Security and Email Security is a single screenshot charted for the preambles of claims 18, 32, and 46. *See* Ex. 6 at 5, 48, 56. First, no party has argued that the preambles are limiting. Second, like the '389 and '844 Patent charts, at most AMD is accused—not Email Security and Web Security. In fact, the image in which "Web and Email Security" appears is directed to the functionality of *AMD* and merely contemplates that AMD may optionally be added to these other products. This is insufficient to "illustrate why" Web Security and Email Security allegedly infringe the '869 Patent. *Vervain*, D.I. 59 at 9.

This trend continues with the '243 and '932 Patents—Plaintiffs' only references to Email Security and Web Security are limited to screenshots showing that AMD may (or may not) be integrated with Email Security and Web Security. *See, e.g.*, Ex. 7 at 9, 19, 25; Ex. 8 at 9, 23, 83. These obscure references to these products are merely a sideshow to what Plaintiffs appear to have actually accused (*i.e.*, AMD). Nothing in these charts "illustrate why" Web Security and Email Security allegedly infringe any of Plaintiffs' Asserted Patents. *Vervain*, D.I. 59 at 9.

**CDR** is not substantively accused for the '928 Patent, despite being listed in the

8

introductory language of the chart. Aside from references to CDR charted against the preamble of two independent claims (*see* Ex. 5 at 6-8 and 89-90), there are only two references to CDR in the entirety of the '928 Patent chart. *See* Ex. 5 at 76 (claim 5), 81 (claim 7). In claim 7, Plaintiffs are not even pointing to CDR functionality, but to antivirus scanning, which is not performed by CDR. In claim 5, Plaintiffs wholly fail to explain how the single reference to CDR (*e.g.*, that CDR "sanitizes file downloads" (*id.* at 76)): (1) meets the limitations of the claim, or (2) how CDR meets the limitations of claim 1 from which claim 5 depends. This is yet another attempt by Plaintiffs to inject a second product into their infringement contentions without support.

2.  Products Not Accused within Specific Charts Should be Struck

Plaintiffs' contentions are also deficient with respect to certain products in specific charts. For the **'389 Patent**, Plaintiffs' superficial allegations of infringement related to NGFW should be struck for the same reasons described above with respect to DLP, Email Security, and Web Security—the only reference to NGFW in the entirety of the chart's body is that the accused product, ACE, may be embedded in other products. *See* Ex. 1 at 5. The infringement allegations provide no accusations specific to NGFW nor explanation of how it allegedly reads on the claims. For the **'844 Patent**, Plaintiffs' superficial allegations of infringement related to NGFW should be struck. Like CASB, the reference to NGFW is hidden in a graphic about the accused product AMD. *See* Ex. 2 at 37, 42, 44, 46. There is no explanation of how this product is accused or reads on the claims; these images do not "illustrate why" ***NGFW*** allegedly infringes this patent. *Vervain*, D.I. 59 at 9. For the **'928 Patent**, Plaintiffs' superficial allegations of infringement related to SWG should be struck. The only reference to SWG relates to how secure web gateways may be used with the accused product, RBI. Ex. 5 at 15, 25 (underlining RBI functionality, not SWG). There is no explanation as to how SWG reads on either of these claim elements.

9

C. **Factor 3: "the danger of unfair prejudice"**

The danger of unfair prejudice to Forcepoint is particularly high, while it is particularly low to Plaintiffs. For Plaintiffs, their remaining infringement theories remain intact; not a single patent's contentions would be struck in their entirety so Plaintiffs could continue to assert each of its patents at this stage of the case. In contrast, not striking the products and allegations described in this Motion results in Plaintiffs demanding Forcepoint's highly confidential documents and source code related to products that are not actually accused, which is not only costly and burdensome but also an additional security risk of more source code leaving Forcepoint. Forcepoint should not have to produce its highly confidential documents or source code for products that are not actually accused and do not have a cognizable theory of infringement.

D. **Factor 4: "the availability of a continuance and the potential impact of a delay on judicial proceedings"**

Striking the specific infringement allegations described in this Motion would result in no delay. Discovery does not close until January 2024. And, in fact, striking Plaintiffs' superficial contentions will allow the parties to focus discovery on the real accused products and make these proceedings more efficient.

III. **CONCLUSION**

Forcepoint respectfully requests that the portions of Plaintiffs' infringement contentions described as deficient in this Motion be struck, specifically:

- Plaintiffs' infringement allegations against Forcepoint's Data Loss Prevention (DLP), Cloud Access Security Broker (CASB), Secure Access Service Edge (SASE), the Forcepoint ONE platform, Email Security, Web Security, and Content Disarm & Reconstruction (CDR) in their entirety;

- Plaintiffs' infringement allegations against Next Generation Firewall (NGFW) from Plaintiffs' infringement contentions for the '389 and '844 Patents; and

- Plaintiffs' infringement allegations against Secure Web Gateway (SWG) from Plaintiffs' infringement contentions for the '928 Patent.

Dated: May 19, 2023                                 Respectfully submitted,

/s/ Kat Li
Kat Li (SBN 24070142)
kat.li@kirkland.com
Nadia E. Haghighatian (SBN 24087652)
nadia.haghighatian@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone: (512) 678-9100
Facsimile: (512) 678-9101

Adam R. Alper (admitted *pro hac vice*)
aalper@kirkland.com
Akshay S. Deoras (admitted *pro hac vice*)
adeoras@kirkland.com
Laura Ashley Harris (admitted *pro hac vice*)
lauraashley.harris@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Michael W. De Vries (admitted *pro hac vice*)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Leslie M. Schmidt (admitted *pro hac vice*)
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for Forcepoint LLC*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the parties have complied with the meet and confer requirement and counsel for plaintiffs has indicated that plaintiffs are opposed to the relief requested in this motion.

*/s/ Kat Li*
Kat Li

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record as being served with a copy of the foregoing document via the court's CM/ECF system on May 19, 2023.

*/s/ Kat Li*
Kat Li
