## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| WEBROOT INC. and OPEN TEXT, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> SOPHOS LTD., <br><br> *Defendant*. | Case No. 6:22-CV-00243-ADA-DTG (LEAD CASE) <br><br><br> Case No. 6:22-CV-00240-ADA-DTG (Consolidated) <br><br> **JURY TRIAL DEMANDED** |

## ORDER ON SOPHOS DISCOVERY DISPUTE

The parties raised the following discovery dispute with the Court by email submission on May 24, 2023.

## ISSUE

Providing Sophos with the expert work history information required by the Protective Order before allowing Webroot's expert to review Sophos's source code

## DEFENDANT'S POSITION

**Relief**: (1) Order Webroot to comply with the Protective Order by providing Sophos with the work history required for its expert, Dr. Eric Cole, without restricting the information to counsel or requiring a signed undertaking by Sophos's employees who review the information; and (2) preclude Dr. Cole from reviewing Sophos's source code until Sophos has received the required information and has had a reasonable opportunity to investigate whether Dr. Cole's work history presents any conflicts.

**Basis for Relief**: Before an expert reviews source code, the Protective Order requires the receiving party to provide:

> a list of companies that the individual has been employed by or provided consulting services ... and a description ... setting forth the specific technology at issue and the work the individual was specifically engaged in during that consultancy or employment.

ECF 233, Paragraph 7(d).  The Protective Order requires this information to be "served *upon the producing Party*," not merely made available to counsel.  *Id.*  This transparency is necessary for the producing party to investigate whether the  expert's work presents a conflict that should preclude access to the party's highly sensitive code.

Contrary to this express requirement, Webroot designated its expert's work history "Attorneys Eyes Only," requesting outside counsel to "confirm that you will not send this information to your Client."  Ex. B at 3.  Sophos notified Webroot within 72 hours that Webroot's restrictions hampered the investigation, but Webroot did not respond.  Ex. B at 1.  Sophos thus had no choice but to object.  Webroot ultimately proposed Sophos's employees could review Dr. Cole's work history if each signed on to the Protective Order.  Webroot's demand contradicts the Protective Order and unduly burdens Sophos's investigation.

Sophos's source code is its most sensitive, business-critical asset.  Because "[s]ource code is among a company's most valuable and protected assets," *Arigna Tech. Ltd. v. Samsung Elec. Co.*, No. 6:21-cv-00943, Dkt. No. 69, at 4 (W.D. Tex. Apr. 12, 2022), the Protective Order requires Dr. Cole to provide his work history *to Sophos* before he may review its code.  The purpose is to evaluate potential conflicts, and requires Sophos business personnel to determine whether Dr. Cole's engagements conflict with Sophos's business.

Webroot's "compromise" would require every individual Sophos's counsel consults to sign an undertaking subjecting themselves to legal process in the United States.  That contradicts the Protective Order, which requires service of the information on *Sophos*, without restricting those who review it.

Modifying the Protective Order unduly burdens Sophos.  Requiring these undertakings would hamper Sophos's investigation and create delay each time Sophos identifies an employee it needs to consult.  The undertakings also burden the employees who sign them, many of whom are based abroad.  They are not consultants hired for litigation, as the parties' experts are, nor are they in-house lawyers "the parties contemplated" might execute these undertakings.  They are ordinary business people who would not otherwise be personally subject to "sanctions and punishment" in a foreign country and should not be forced to submit to that threat—potentially leaving Sophos unable to complete its investigation.  Webroot's proposal would also require further negotiation of and amendments to the Protective Order, whose provisions (*e.g.*, prosecution bar) were never meant to apply to the sort of information at issue here nor the individuals who need to view it.

Webroot has other experts who can review Sophos's code and Sophos expedited access for Webroot's counsel.  Dr. Cole's entanglements do not entitle Webroot to defy or rewrite the Protective Order.

## PLAINTIFFS' POSITION

**Relief**: Plaintiffs request that the Court order Sophos to have any Sophos employee that it deems necessary to vet Dr. Cole sign the PO before viewing Dr. Cole's confidential disclosure, and that Sophos agree to permit Dr. Cole to review Sophos's source code or file a motion pursuant to PO ¶ 7(d) within three (3) days of the Order.  In addition, Sophos' lawyers shall affirm in writing that anyone that is provided access to Dr. Cole's information has executed the PO and the lawyers will retain each executed PO.

**Basis for Relief**:  Sophos does not dispute that Plaintiffs provided the information required under PO regarding Dr. Cole. Nor has it raised any potential conflict that would preclude Dr. Cole from serving as an expert in this case.  Rather, Sophos argues that unless it is permitted to

disseminate a portion of Dr. Cole's confidential "work history" to any Sophos employee without restrictions, then Dr. Cole cannot serve as an expert.  In short, Sophos wants Dr. Cole to violate the NDAs he signed with his clients or for Plaintiffs to retain another expert.  Neither of these outcomes are intended by the PO provision and both would substantially prejudice Plaintiffs.

Regardless, there is an easy compromise that Sophos has rejected: any Sophos employee who is provided Dr. Cole's confidential "work history" can execute the PO—the same one Dr. Cole has executed—for that limited purpose. Plaintiffs are simply asking that Dr. Cole's confidential information be provided the same protection as other confidential information in this case.  Plaintiffs' compromise balances protecting Dr. Cole with Sophos's ability to vet Plaintiffs' chosen expert.

**Background:**  Plaintiffs disclosed Dr. Cole in compliance with the PO, including his CV and a list of all companies for which he provides advisory work.  Ex. A.  Sophos waited 10 business days before raising an objection based solely on the confidentiality of the short list of companies. Ex. B.

Despite repeated attempts to address Sophos "concerns," Sophos ultimately rejected all of Plaintiffs' proposed compromises.  Ex. C.

**Argument:**  Dr. Cole requires protection because his advisory work is subject to very strict NDAs that prohibit disclosure of the companies and the work performed.

To be clear, there is no restriction on Sophos separately vetting Dr. Cole or his list of companies. It is the link between Dr. Cole and those companies that is confidential. The unlinked vetting was sufficient for the ***four*** other Defendants – only Sophos needs to link the two.

Sophos argues that its employees may be burdened by signing the PO (subject them to "to the threat of 'sanctions and punishment' in a foreign country"). But the PO, which was negotiated

for weeks by the parties, is based on a standard order that contemplates in-house employees (among myriad of other persons) executing.  If a Sophos employee has concerns about the PO, Sophos can explain it and answer his/her questions. And, if these Sophos's employees have no intention of disseminating Dr. Cole's confidential information then there is no "burden" on or "threat" to anyone.

Sophos also argues that the PO would have to somehow be modified to accommodate this request. Not so—the PO protects designated materials received under the PO from dissemination. By signing the PO, these unidentified Sophos employees would be bound to treat that information in accordance with the PO, including refraining from further dissemination. No revisions to the PO are needed and Sophos does not identify any.

That Sophos is opposed to any protection for Dr. Cole's confidential work history is—in itself —a strong indicator the information needs protection.

## **ORDER**

On May 26, 2023 the Court held a video conference to resolve the parties' discovery dispute.  Having considered the parties' submissions and oral arguments, the Court **ORDERS** the following:

1) Dr. Cole's engagements subject to NDAs ("Confidential Cole Information") shall be designated and treated as Confidential under the Protective Order; and

2) If, as part of its investigation into potential conflicts, Sophos's counsel needs to share Confidential Cole Information with a Sophos employee not otherwise permitted to view Confidential material under the Protective Order, Sophos may so do so on the condition that the employee first sign Appendix A to the Protective Order.  Sophos must retain the signed forms but does not need to disclose them to Plaintiffs.

SIGNED this 2nd day of June, 2023.

DEREK T. GILLILAND
U.S. MAGISTRATE JUDGE