**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WEBROOT, INC. and OPEN TEXT, INC., | § | |
| Plaintiffs | § | |
| v. | § | Case No. 6:22-cv-239-ADA-DTG |
| TREND MICRO INC., | § | Lead Case No. 6:22-cv-243-ADA-DTG |
| Defendant. | § | JURY TRIAL DEMANDED |
| TREND MICRO INC., | § | |
| Counter-Plaintiff | § | |
| v. | § | |
| WEBROOT, INC. and OPEN TEXT, INC., | § | |
| Counter-Defendants, | § | |
| and | § | |
| OPEN TEXT CORP. | § | |
| Counter-Defendant. | § | |

## <u>ORDER ON TREND MICRO DISCOVERY DISPUTE</u>

The parties presented a discovery dispute chart under which Defendant Trend Micro requested an order requiring Plaintiffs Open Text and Webroot, Inc. ("Plaintiffs") to provide information on which of its products include the accused functionalities, the date when each such product was developed and released, and financial information for the counterclaim accused products. The issues resolved by the Court were whether Plaintiffs could invoke Federal Rule of Civil Procedure 33(d), referring to its entire source code production, to identify which of its products include the accused functionalities and when each product was developed and released,

and whether Plaintiffs must produce financial information for the counterclaim accused products by September 13, 2023.  The parties' positions are more fully detailed in Attachment A to this Order.  The Court heard oral argument on September 12, 2023 and granted Defendant's requests, in part.

Thus, in accordance with that ruling, the Court hereby **ORDERS** both parties to provide information on which accused products include accused functionalities, with accused functionalities defined as features the accused party understands to be at issue, and identify any non-accused products that are reasonably similar to the accused products and that also use those accused functionalities.  To the extent a party relies upon Federal Rule of Civil Procedure 33(d) to provide this information, it must do so with specificity.  In addition, Plaintiffs must start producing financial information for the counterclaim accused products within 14 calendar days from the date of the hearing, which is September 26, 2023, and both parties must substantially complete production of financial information with respect to the accused products by October 20, 2023.

SIGNED this 19th day of September, 2023

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

| Issue | Requesting Party's Position | Responding Party's Position |
|---|---|---|
| Whether OTI should be compelled to provide a response to Trend Micro's Interrogatory No. 1 | Trend Micro's ("Trend") Interrogatory No. 1 seeks information on which OTI products include the functionalities Trend accuses of infringing the counterclaim asserted patents, as well as the date when each such product was developed and released. Ex. A at 10.  In a response served May 22, 2023, OTI stated that it had not completed its investigation, and that it would supplement its response at a later date. *Id.* at 11.  After multiple meet and confers, OTI finally served a supplemental response on August 25, 2023, but that supplemental response gave no substantive information.  Instead OTI cited Federal Rule 33(d) and referred to the entirety of its source code production.  *Id.*<br><br>**Argument:**<br><br>For three months, OTI has been telling Trend that it would provide information on which of its products include the accused functionalities.  Yet when OTI finally served its supplemental response, it was in fact a non-response.  Specifically, the supplemental response provides no information on which products include accused features, nor does it provide any of the requested date information.  OTI instead pointed to the entirety of its 26 terabyte source code production, citing Rule 33(d), but it did not identify any specific files, folders, functions, or modules.  It is improper to invoke Rule 33(d) in such an overbroad manner.  *See Quintel Tech. Ltd. v. Huawei* | Trend does not cite the full scope of its Interrogatory No. 1, which it has refused to narrow.  Interrogatory No. 1—in its entirety—requests the identity of "all Accused Counterclaim Products as well as any other products developed, made, sold or offered for sale, or otherwise provided by You during the Relevant Time Period that provide ***Accused Counterclaim Functionalities***, including the date when each was developed and released." OTI properly objected to the scope and relevance of this request.  Simply put, this interrogatory makes no sense and would require OTI to parse every limitation and identify any product that has any feature listed, including generic components like a "server" or "processor."<br><br>Instead, OTI produced all the technical information for the products and features identified in Trend's infringement charts. That includes the source code and technical documents in its possession, custody or control regarding the products that Trend accused of infringement. This is undisputed. As such, Trend can examine those materials to determine what products have whatever feature it is interested in. OTI, therefore, properly cited to Rule 33(d) in its response.<br><br>**Argument:** |

| Issue | Requesting Party's Position | Responding Party's Position |
|---|---|---|
|  | *Techs. USA, Inc.*, 2017 U.S. Dist. LEXIS 186655 at *20-21 (E.D. Tex. Jun. 29, 2017) (granting motion to compel a response that identifies specific documents).<br><br>The requested information is unquestionably relevant.  Trend has identified a number of infringing functionalities.  Trend further identified certain programs that use those functionalities, based on publicly-available information.  Only OTI knows, however, exactly where each accused functionality is used within its products.  OTI also must know the release dates for its products.<br><br>OTI's source code might provide information on where accused functionalities are used, but (1) OTI has not produced the source code for all of its products, only a subset, so even if Trend reviewed the entirety of OTI's voluminous code production it would still not answer the interrogatory; and (2) if OTI wishes to invoke Rule 33(d) to refer to its code, it should at least identify specific source code files or functions.  Referring to the entirety of its production is not a valid use of Rule 33(d).  Also, the source code cannot provide release dates.<br><br>OTI has never argued the requested information is irrelevant, nor has it identified any specific burden in providing the requested information.  Indeed, OTI asked Trend to provide similar information for its accused products.  *See* Ex. B. | Trend's interrogatory has two subparts: 1) all products that include "***Accused Counterclaim Functionalities***" and 2) when those products were developed and released.<br><br>With regard subpart (1), the requested relief should be denied because the term "Accused Counterclaim Functionalities" is vague and overly broad: it is any "functionalities [Trend] contends infringes, including as identified in [Trend's] Answer and Counterclaims or infringement contentions." That would seemingly cover each feature identified with respect to any claim limitation, including things like "a computer" and "a server."  This information is simply not relevant. To the extent Trend is asking which products include all of the features in its contentions, OTI provided that information in the source code and documents, which it cited pursuant Rule 33(d). Trend can just as easily determine which of those products includes whichever features it is interested in.<br><br>Again, Trend has not provided a targeted request for specific features, for example, which products include "machine learning for identifying malware," or which products "analyze behavior information to identify malware." It instead shifts the burden to OTI to figure out what Trend "contends infringes" its patents. In any event, as far as OTI understands, it has produced the source code and technical documents for the products that include the relevant features to the counterclaim patents. |

| Issue | Requesting Party's Position | Responding Party's Position |
|---|---|---|
| | **Requested Relief:**<br><br>Compel OTI to provide a supplemental response Trend's Interrogatory No. 1 within 7 days.  The Court should further order that, to the extent OTI invokes Federal Rule 33(d), it must identify source code files or functions with specificity. | With regard subpart (2) requesting "the date when each such product was developed and released," this request is problematic because the products are released in versions and each version may or may not have a feature Trend is interested in. But OTI has again provided the information Trend needs to make that determination. For example, OTI has produced the complete source code for WSA (*i.e.* every version) spanning almost two decades that it could locate. Whatever features Trend is interested in, it can simply identify the first version that has it. Not only is it equally burdensome to review the source code and provide this information, it would be impossible for OTI to perform this task because OTI does not know what Trend contends are the relevant "Accused Counterclaim Functionalities."<br><br>Trend's argument that there is too much source code is disingenuous. OTI—voluntarily—identified which directories pertain to each of the products it produced source code for outside of the context of this interrogatory. In contrast, Trend has refused to do so, and has even failed to respond to interrogatories that directly seek this information.<br><br>Trend's attempt to create a false equivalency should also be rejected. OTI has asked Trend to identify which Accused Products the source code it produced |

| Issue | Requesting Party's Position | Responding Party's Position |
|---|---|---|
| | | pertain to because those source code directories are not tied to an Accused Product.<br><br>While it is unnecessary because Trend already has this information, OTI agrees to supplement its prior response to identify the directory of the source code for its products. It will also identify bates ranges for documents produced regarding these accused products as part of its Rule 33(d) response.<br><br>Because Trend's request is overbroad and directed to irrelevant and burdensome discovery, and in view of the significant discovery that OTI has already provided, Trend's request should be denied. |
| Whether OTI should be compelled to produce financial information for accused products. | OTI has not yet produced any financial information for its accused products.  Trend has been asking for this information since April, but OTI has not given any date by which it will provide this information.  There is no dispute financial information for OTI accused products is relevant to damages, and OTI has not suggested there is any burden in collecting such information.  Such information is responsive to at least Trend's Requests for Production No. 9.  *See* Ex. C at 19.<br><br>**Requested Relief:**<br><br>Compel OTI to provide financial information (at least revenue and units) for the counterclaim accused products by no later than September 13, 2023. | There is no dispute here.  OTI has agreed to produce financial information related to its accused products and has told Trend that it is actively gathering, reviewing, and preparing relevant and responsive documents for production.  Because of the number of products Trend has accused, this process is time consuming and complex.  OTI indicated during its last meet and confer with Trend that it would be producing financial documents within the next few weeks.<br><br>OTI would also point out that it has similar complaints regarding Trend's failure to produce financial documents, which it has raised on numerous occasions. To date, Trend has not remedied any of the issues identified by OTI. In fact, Trend refuses to |

| Issue | Requesting Party's Position | Responding Party's Position |
|---|---|---|
| | | answer basic questions about the limited made-for-litigation .pdf documents it provided for limited products and which are clearly filtered and apportioned in ways that Trend will not disclose.<br><br>Accordingly, to the extent the Court orders a date certain for production of financial information for accused products, the date should apply to both parties equally. Moreover, Trend should not be permitted to perform unilateral apportionment of its financial information. OTI is entitled to all financial data for the Accused Products, including revenue for products and services that include or relate to the Accused Products. |